FILED
2017 Jan-17 PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SARA BROOKE SMITH, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No. 2:15-cv-00964-HGD |
| | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

Plaintiff protectively filed an application for Supplemental Security Income on February 27, 2012, alleging that she became disabled on September 12, 2008. (Tr. 85, 130-35). A hearing was held before an Administrative Law Judge (ALJ) on October 23, 2013. Plaintiff was represented by counsel, and an impartial vocational expert (VE) also testified. (Tr. 42-70). On January 16, 2014, the ALJ issued an unfavorable decision. (Tr. 17-31). The Appeals Council denied plaintiff's request for review. (Tr. 1-5). The case is now ripe for review pursuant to 28 U.S.C. §§ 405(g) and 1383(c)(3).

## I.     ALJ Decision

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant

has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

      Following this five-step procedure, the ALJ found that plaintiff has the following severe impairments: bipolar disorder, anxiety disorder, and polysubstance abuse. (Tr. 22). The ALJ also found that plaintiff's condition did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Tr 22-24). The ALJ further found, based on the entire record, that plaintiff has the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] must avoid hazardous machinery and unprotected heights. She is able to understand, remember, and carry out simple tasks for two hours at a time with normal breaks. She must work in an environment that does not require excessive workloads, quick decision-making, rapid changes, and multiple demands. She is able to adapt to occasional, well-explained changes. While all competitive employment has production requirements, [Plaintiff] must work in an environment that does not have stringent production or speed requirements and thus may not perform faced-paced assembly line work, quota-based work, or piece rate work. [Plaintiff] may have no contact with the public and no more than superficial, occasional contact with co-workers and supervisors. She will be off task 10 percent of the day.

(Tr. 24).

The ALJ concluded that plaintiff was unable to perform her past relevant work. (Tr. 30). However, based on the testimony of the VE, the ALJ found that there were other jobs available in significant numbers in the economy that plaintiff could perform. (Tr. 30-31). As a result, the ALJ found that plaintiff was not disabled under the Social Security Act. (Tr. 31).

## II.     Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ erred in denying benefits asserting that the ALJ's findings regarding plaintiff's RFC are not based in substantial evidence. (Doc. 12, Plaintiff's Brief, at 1).

**III.    Standard of Review**

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court

acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV. Discussion

Plaintiff asserts that the ALJ gave insufficient weight to certain findings by two doctors. Dr. Chebon Porter examined plaintiff on behalf of the Social Security Administration in May 2012 diagnosed plaintiff with, *inter alia*, panic disorder with agoraphobia, generalized anxiety disorder, and intermittent explosive disorder with a Global Assessment of Functioning (GAF) of 39. He found her to have a schizoaffective disorder, bipolar type (provisional), and polysubstance dependence in early full remission. (Tr. 287). Dr. Porter made general assessments of plaintiff's condition, stating that she suffered from mood and thought disturbances that were chronic, that she appeared to be in significant distress, and that she would likely benefit from assistance managing benefits. (Tr. 287). Plaintiff also asserts that the GAF of 39 indicates an inability to maintain employment and adequate social functioning as set forth in DSM-IV (14th Ed.).

Plaintiff was also treated by Dr. Scott McClure, M.D., in 2012 and 2013. He assessed a marked degree of impairment in maintaining social functioning and concentration, persistence, or pace and in responding to customary work pressures and supervisors. (Tr. 357-58). Plaintiff states that these findings are sufficient to

meet the Listings as set out in Part B of Listing 12.04 and 12.06, which require two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.

Plaintiff notes that the ALJ rejected both of these opinions as based too heavily on plaintiff's self-reports. (Tr. 28, 29). She asserts that doing so results in the ALJ substituting his own judgment for that of a physician/psychologist, which is improper, citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992). Plaintiff further asserts that the ALJ failed to reconcile any inconsistencies in the record that warranted the consultative examination which plaintiff was required to undergo. Finally, plaintiff states that the ALJ had no other medical opinion on which to rely, other than the mental RFC by the reviewing medical consultant at the State Agency (Tr. 80-90) which the ALJ also rejected (Tr. 29-30). She concludes that, absent development of the record to clarify the perceived concerns about the opinions, and to obtain a medical source opinion (MSO) by other means, the ALJ's findings are not based on substantial evidence.

When determining the weight to give a doctor's opinion, an ALJ may consider numerous factors, including whether the doctor examined the claimant, whether

he/she treated the claimant, the evidence the doctor presents to support his/her opinion, whether it is consistent with the record as a whole, and the doctor's specialty. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must afford substantial weight to a treating physician's opinion unless he finds "good cause" not to do so. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). If a physician only examines the claimant one time, the ALJ does not have to consider this physician a "treating" physician and does not have to give "great weight" to his opinion. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004). An ALJ may reject the opinion of a non-treating physician whenever the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). An ALJ does not owe the same level of deference to the opinions of one-time medical examiners as to treating physicians. *McSwain*, 814 F.2d at 619.

Dr. Porter conducted a consultative examination in May 2012. After a review of the results of this examination, the ALJ gave the opinion of Dr. Porter little weight because it was made after a single examination, relied too heavily on plaintiff's self-report, was inconsistent with plaintiff's stated ability to care for her child, and was inconsistent with plaintiff's treatment records. (Tr. 29).

Because Dr. Porter was not a treating doctor, his opinion was not entitled to any deference or special consideration. *See* 20 C.F.R. § 416.927(c)(2); *see also*

*McSwain, supra* (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician"). In addition, a review of Dr. Porter's report reflects that the ALJ correctly found that the conclusions reached were almost entirely based on plaintiff's self-reported symptoms. The report itself states that the conclusions are based on her "overall history and report." (Tr. 287). Plaintiff's mental status examination performed by Dr. Porter reflected that she was somewhat anxious; her mentation was slow; her thoughts were lucid and goal-directed; her insight and judgment were intact; her speech was normal; and she was alert and oriented times three. (Tr. 285). Nonetheless, her abstraction skills were below expectations and she remembered only one out of three words after a delay. (Tr. 285).

However, Dr. Porter's examination does not support marked limitations and, as noted, it appears based almost entirely on plaintiff's subjective complaints listed in the report. (Tr. 286-87). An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock*, 764 F.2d at 835. "The testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). "A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory."

*Id.* (quotation omitted).  Two factors that may weigh in favor of discounting a treating physician's opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints.  *Id.*  Because Dr. Porter's opinion was based almost entirely on plaintiff's subjective complaints, the ALJ properly gave it little weight.

In addition, treatment notes from Kimberly Wimberly, a licensed clinical social worker, indicated that in 2011 and 2012 plaintiff was taking care of her newborn child while living with her boyfriend and his daughter.  (Tr. 269).  She also attended weekly substance abuse classes for a year (Tr. 62-63, 275-76, 278) and testified that her two-year old had lived with her since birth.  (Tr. 48).  She described a typical day to include doing household chores and feeding, changing, bathing and playing with her son.  (Tr. 49, 167-68).  Although she testified that she does not go out of her house because of panic attacks (Tr. 51), in her function report she indicated that she would hang out with friends and go to Walmart.  (Tr. 171).  The ability to do these things reflects that plaintiff does not have the marked limitations and impairments in reality asserted by Dr. Porter.  Therefore, the ALJ properly discounted his opinion for this reason, as well.

Dr. Porter's opinion was also inconsistent with other evidence.  "[T]he more consistent an opinion is with the record as a whole, the more weight we will give that

opinion." 20 C.F.R. § 416.927(c)(4), cited in *Daniel ex rel. C.P.D. v. Colvin*, 2014 WL 931951, at *5 (N.D.Ala. Mar. 10, 2014). In 2011 and 2012, plaintiff received psychiatric treatment at Eaastside Mental Health for bipolar disorder and polysubstance dependence. (Tr. 242-49, 254-61). In November 2011, plaintiff described her mood as normal but reported some mood swings because she was not on medication due to pregnancy. (Tr. 242). Dr. Badari Birur, M.D., indicated in a mental status examination that her appearance, attention, mood, speech, affect, thought content, and perception were appropriate. She was oriented; her thought process was goal directed; and her insight and judgment were fair. (Tr. 243). In January 2012, her mental status was essentially the same except that her affect was worried and distressed due to child custody issues. (Tr. 248-49). In March 2012, plaintiff claimed to have auditory hallucinations, so Dr. Birur adjusted her medication. (Tr. 254-55, 260-61). Although plaintiff also reported to Ms. Wimberly that she was having auditory hallucinations and more frequent panic attacks in 2012, plaintiff also stated that she was not taking the medication Dr. Birur had prescribed because it had been ineffective in the past. (Tr. 276, 279-80, 282-83).

In May and July 2012, Dr. Scott McClure, M.D., who was treating plaintiff for depression and anxiety, reported that plaintiff was doing well and her mental status was normal. (Tr. 89-90). In November 2012 and January 2013, Dr. McClure noted

that plaintiff's speech was slow and her mood was depressed and anxious. (Tr. 354-55). Otherwise, her mental examination was normal, including no hallucinations and intact cognition. (*Id.*). By February 2013, Dr. McClure noted that plaintiff was doing much better and had a normal mental status examination. (Tr. 353). Approximately six months later, Dr. McClure found plaintiff to be normal except for a flattened affect and depressed mood. He prescribed medication and recommended a six-month follow-up. (Tr. 352).

Thus, the treatment records reflect a generally normal mental status for plaintiff except for occasional depression and flattened affect. Treatment was conservative. These records also support the ALJ's decision to give little weight to Dr. Porter's opinion.

The opinion of Cryshelee Patterson, Ph.D., a state agency consultant, also supports the ALJ's decision in this regard. After reviewing plaintiff's records as of October 2012, Dr. Patterson opined that plaintiff had mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace. (Tr. 177). Plaintiff could understand, carry out, and remember simple work tasks for extended periods but would miss one or two days of work per month. (Tr. 81). Plaintiff would function best without close proximity to others; should avoid excessive workloads, quick decision making, rapid

changes, and multiple demands; should have casual and limited interaction with the public; and should have casual interactions with co-workers. (Tr. 81). The ALJ gave some, but not great, weight to this opinion because there was no medical support in the record for the absenteeism rate. (Tr. 29-30). State agency consultants are highly qualified specialists who are experts in the Social Security disability programs. Their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (S.S.A.).[1] In this case, for reasons stated on the record, the ALJ properly gave some weight to the state agency consultant opinion.

Plaintiff also asserts that the ALJ erred in discounting Dr. McClure's November 2013 opinion. In that opinion, Dr. McClure found that plaintiff had moderate restrictions in activities of daily living; understanding, carrying out and remembering instructions; responding to co-workers; performing simple tasks; and performing repetitive tasks. (Tr. 357-58). He also found that she had marked limitations in social functioning; concentration, persistence or pace; responding to customary work pressures; and responding to supervision. (Tr. 357). The ALJ gave

---

[1] In unpublished opinions, the Eleventh Circuit has stated that ALJs must weigh the opinions of state agency physicians under the Commissioner's regulations. *See Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (finding ALJ was entitled to reject opinion of examining psychologist because he had examined claimant on only one occasion and his opinion was contrary to opinions and assessments of state agency psychologists).

some, but not great, weight to the opinion by making the moderate impairments a part of her RFC finding. However, the ALJ rejected the marked limitations. (Tr. 28). The ALJ explained that she rejected these limitations because they were inconsistent with plaintiff's reported activities and were inconsistent with the treatment recirds.

For instance, Dr. McClure's own notes do not document difficulties with authority figures or with others. This opinion was discounted because it was based solely on plaintiff's reports, which the ALJ found not credible. (Tr. 25-28). The ALJ further noted that this opinion was inconsistent with his own findings on examination because, other than occasionally noting plaintiff had a depressed and anxious mood, Dr. McClure indicated that plaintiff was doing well, with normal mental status examinations. (Tr. 289-90, 352-55).

Finally, the ALJ's decision to discount this part of Dr. McClure's opinion was based, in part, on plaintiff's activities, including caring for her toddler and attending weekly substance abuse meetings. *See Saucier v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 926, 929 (11th Cir. 2014) (ALJ properly discounted medical opinion in part based on the fact that it was inconsistent with plaintiff's activities).

Plaintiff also asserts that the ALJ should have developed the record concerning her mental impairments by ordering a second consultative examination.

"[A] hearing before an ALJ is not an adversary proceeding," and "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). However, the determination to obtain a consultative examination is discretionary, 20 C.F.R. § 404.1519a(a), and the Eleventh Circuit has explained that an ALJ is not required to order a consultative examination so long as the record contains sufficient evidence allowing the ALJ to make an informed decision. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The record, as discussed above and considered by the ALJ in reaching the RFC finding and disability determination, provided ample support for those findings. Plaintiff's disagreement with the interpretation of that evidence does not warrant a remand of her case. *Sarria v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 722, 724 (11th Cir. 2014).

Plaintiff also complains that the ALJ did not rely on a medical source statement to determine the effect of plaintiff's mental impairments. However, this is not necessary where other evidence in the record is sufficient to support the ALJ's disability determination, even in the absence of such a formal assessment. The Commissioner alone, and not a medical source, determines an RFC. *Robinson v. Astrue*, 364 Fed.Appx. 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] . . . is within the province of the ALJ, not of doctors."). Medical source statements are not determinative, and the ALJ is within her discretion to credit

all, part, or none of the opinions of a medical source's proffered evidence. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *Castle v. Colvin*, 557 Fed.Appx. 849, 853-54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). Thus, a medical source statement is not essential to an RFC determination. The ALJ is under no obligation to obtain or adopt a medical source statement's findings as her RFC finding. In this case, the ALJ's RFC determination without a medical source statement is based on substantial evidence and is in accordance with controlling law. *Davis v. Colvin*, 2016 WL 1263686, at *2 (M.D.Ala. Mar. 31, 2016).

### V. Conclusion

Accordingly, upon review of the administrative record, and considering all of plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Therefore, that decision is due to be AFFIRMED. A separate order will be entered.

DONE this 17th day of January, 2017.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE